KANSAS CITY, FORT SCOTT & MEMPHIS RAILROAD COMPANY v. MARK EAGAN.

No. 12,466. (67 Pac. 887.)

SYLLABUS BY THE COURT.

1. PRACTICE, DISTRICT COURT—*Pleadings Sent with Jury.* When the pleadings in a case are lengthy and complex, and made up of multifarious allegations of fact in forms of expression difficult for the ordinary mind to understand, it is error for the court, without defining the issues, to send the pleadings with the jury for them to determine the points in controversy between the parties.

2. ———— *Sufficient Exception.* An exception to an instruction which contained the following statement to the jury: "You will receive with these instructions the pleadings in the case, the second amended petition of the plaintiff, the amended answer of the defendant, and the reply of the plaintiff," is a sufficient exception to the act of sending the pleadings with the jury.

3. RAILROADS—*Measure of Damages.* In an action for damages for personal injuries negligently inflicted, it is material error to permit the plaintiff to prove that he has a family, consisting of a wife and children.

Error from Miami district court; JOHN T. BURRIS, judge. Opinion filed February 8, 1902. Reversed.

*Pratt, Dana & Black*, for plaintiff in error.
*Frank H. Sheridan*, for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J. : This was an action brought by Mark Eagan against the Kansas City, Fort Scott & Memphis Railroad Company, to recover damages for injuries received by him at the hand of the company's employees while riding as a passenger on one of its trains. The plaintiff got on the train at Kansas City to go to Hillsdale. A drunken man likewise got aboard at Kansas City. He was disagreeable in his conduct in the coach in which he was riding and was removed by the trainmen to another coach. The plaintiff was in that coach. The drunken man made efforts to return to the coach from which he had been taken, but the trainmen took hold of him and prevented him. In endeavoring to restrain him a scuffle ensued, and the drunken man and one of the trainmen fell over on the plaintiff and injured him, for doing which suit was brought. The plaintiff alleged in his petition, and offered evidence tending to prove, that the trainmen threw the drunken man over on him. That act was averred to be negligent and wrongful; and the further allegation was made that the defendant wrongfully and negligently failed to put the drunken man off the train, so as to relieve the other passengers of the annoyance, disgust and

danger of his presence.   A verdict and judgment
were rendered in plaintiff's favor, from which error
has been prosecuted.

The court, in its instructions to the jury, stated in
general terms that it was the duty of the company to
exercise care for the protection of its
passengers from injury, and to secure
them safety and comfort while traveling in its cars,
and that if a passenger should be injured by the wrong-
ful or negligent act of the company's employees a re-
covery therefor could be had, but it wholly failed to
define or state to the jury the issues in controversy
between the plaintiff and defendant.   In several in-
structions the jury were told that if, in their judgment,
certain matters had been proved by one or the other
of the parties, a recovery could or could not be had,
but these instructions were as to specific matters, and
did not purport to be general statements of the points
in controversy to which the consideration of the jury
should be limited.   Instead of defining the issues, the
court stated to the jury, in one of his instructions,
that he sent with them the pleadings in the case,
specifying such papers by name.   This, in our judg-
ment, was error.   The plaintiff's petition covers seven
lengthy typewritten pages of the record.   Its alle-
·gations are prolix and redundant in the extreme,
specifying in great detail and with much adjective
condemnation many acts of wrongful conduct and
negligent omission of duty on the part of the com-
pany's employees.   Generalized, all these allegations
amounted to averments of a negligent failure to eject
the drunken man from the train, and, instead of doing
so, wrongfully throwing him over upon plaintiff, but
they were stated at such length, in such variety of
manner, and in such subsidiary and incidental and

1. Pleadings sent with jury.

inter-related forms of expression, and with so much of tautology and repetition, that a jury could not become otherwise than confused and, perhaps, misled by reading the paper.

While the main allegations of the petition in respect of the negligence and wrongful conduct of the defendant were as to its failure to eject the drunken man, and the throwing him upon plaintiff, yet other acts of negligence and wrong were charged, such as that the company's employees wrongfully permitted the man to get aboard the train, knowing he was in an intoxicated condition, and also wrongfully provoked and irritated him by striking and beating him, and refusing to allow him the possession of his traveling valise. Some evidence was offered in support of at least three, if not all, of the allegations of negligence and wrongful conduct, but what one or more of them presented the meritorious issues of the case under the evidence, or whether all of them presented meritorious issues, the court entirely failed to state.

The unquestioned rule is that it is the duty of the court to define the issues to the jury and not leave them to conjecture the controverted points to be determined. In accordance with that rule, it has been repeatedly held to be error to refer the jury to the paper pleadings to learn the issues between the parties. Such holdings would seem to be manifestly sound, because it is the province of the court, not the jury, to interpret the pleadings.

In 11 Encyclopedia of Pleading and Practice, page 154, it is said :

"Although there are some decisions which hold that it is not error to read the pleadings to the jury or to refer them to the jury in order that they may determine what are the issues in the case, and other decisions holding that, though not erroneous, such practice

is not commendable, the clear weight of authority is
to the effect that it is the province and duty of the
court to state specifically to the jury what issues are
raised by the pleadings, and that it is erroneous to
refer the jury to the pleadings to ascertain for them-
selves what the issues were; that the construction of
the pleadings and the issues raised thereby are ques-
tions for the court alone to determine, and not for the
jury.

"The difficulty which even learned judges often en-
counter in defining the issues as joined in the plead-
ings is argument sufficient in support of the rule.   It
would not conduce to a full and fair trial that jurors,
inexperienced in such matters, were left to determine
the issues from the pleadings."

In *Burns v. Oliphant*, 78 Iowa, 456, 43 N. W. 289, it
was said :

"The necessity of the judge defining the issues is
too apparent to be questioned, and however pressing
the demands may be upon the time of the court, a plain
and concise statement of the issues should always be
given to the jury.

"The case of *Myer v. Moon*, 45 Kan. 580, 26 Pac. 40,
practically announces the doctrine contended for here,
for while in that case the court referred the jury to
the pleadings for the terms of a contract therein set
out, yet the court stated the issues in its charge.

"It is the province of the court to determine the
issues and state them to the jury, and not leave them
to ascertain the effect of the pleadings or the issues
which they present."   (Page 582.)

It may be that if the pleadings in a case were so
clear and simple and stated the issues in such concise
and easily comprehensible language that a jury could
not fail to understand from them the controverted
questions, their reference to the jury without a state-
ment by the court of the issuable facts would not con-
stitute material and reversible error, but such is not

this case. The complex and elaborately drawn peti-
tion, with its multifarious and redundant allegations
of negligence and wrongful conduct, puts the case out
of the possible rule we have just mentioned. Nor do
we mean to hold that the sending of the pleadings to
the jury of itself is error. It is the sending of plead-
ings of the character of the one in question in this
case, without an explanation of the issuable facts pre-
sented by them, which constitutes error. It is a very
common practice, though not a commendable one in
any case, to furnish the jury with the pleadings; but
it is only when the task is imposed on it to learn from
pleadings difficult to understand without aid from the
court that error is committed.

A more difficult question, however, is, Did the de-
fendant below take any proper exceptions to the ac-
tion of the court in failing to instruct
the jury as to the issues in the case,
and in submitting the pleadings to it? The court
did not in terms instruct the jury that it should de-
termine the issues for itself from the pleadings. It
merely stated in the closing sentence of one of its in-
structions : "You will receive with these instructions
the pleadings in the case, the second amended peti-
tion of the plaintiff, the amended answer of the de-
fendant, and the reply of the plaintiff." Whether
the court did, in fact, send the pleadings to the jury,
as he informed it he would, is not anywhere shown
by the record. If he did, the record does not any-
where show that the defendant took exceptions to the
act of doing it. However, proper exceptions were
taken to the court's instructions. Hence, we are to
consider whether the court did actually send the
pleadings to the jury, and, if so, whether the error
has been saved by an exception to the giving of an

2. Exception
sufficient.

instruction stating that he would send them.   Inasmuch as the court stated to the jury that the latter would receive the pleadings, we are of the opinion that we are bound to presume that the papers were furnished as it was stated they would be, and that the jury took them and had them during the deliberations.

Did an exception to the court's instruction in which the jury were merely informed that they would receive the pleadings constitute an exception to the sending of them?   Or, to state it in another form, was the statement of the court to the jury that he would furnish them with the pleadings in the case, and his doing it, an "instruction"?   Within the definition of the word, it is doubtful whether the statement of the court was an instruction.   Not every order, direction or statement by the judge to the jury is an instruction.   An instruction is a direction in reference to the *law* of the case ( *Lawler v. McPheeters et al.*, 73 Ind. 579 ), and a mere statement by the court to the jury that he would furnish them with the pleadings would not seem to be a direction as to any matter of law.   However, it must be borne in mind that the court had not defined the issues of the case, and his sending the pleadings could only have been to enable the jury to determine what they were ; hence, in that view the statement of the court was an instruction, because in the act of sending the papers was implied the purpose for which they were sent, and was implied a direction to use them for that purpose.   Be this as it may, we are constrained to think that an exception to the court's instructions in which he stated his intention to send the pleadings to the jury was an exception to the act of sending them.   As before remarked, we are bound to presume that the court did as he said he

would.    We are bound to presume that he did send out the pleadings.  The statement "you will receive," etc., though made in the future as to the time of the jury's reception of the papers, had the significance of present performance by the court.   It was equivalent to the declaration and the performance of a present act, and in our judgment was covered by the exception taken.

A very grievous error was committed by the court in the admission of testimony.   The plaintiff, when 3. Measure of on the stand as a witness, was asked damages. and made answer as follows :

"Ques.   Are you a married man ?   Ans.   Yes, sir.
"Q.   Have you a family ?   A.   Yes, sir.
"Q.   How many in the family ?"
Objected to as immaterial.
The court:   "It hasn't very much to do with the case, but he may answer."
Defendant duly excepted.
"Ans.   A wife and two children."

This character of evidence has been considered in a large number of cases for damages for bodily injuries, in all of which, so far as we are aware, it has been held objectionable.   The case of *Louisville & Nashville R. R. Co. v. Binion*, 107 Ala. 645, 18 South. 75, was almost identical with this one in the question asked and the answer elicted.   The supreme court tersely summarized the facts and law as follows :

"The second assignment of error is based on the question, which the court allowed to be answered, 'What did your family consist of ?' to which witness replied that he had a wife and three children.   In allowing this answer the court erred.   The damages sued for are for the injury inflicted on the plaintiff and not on his family, and for which the law allows him compensation, no more and no less in case he is

Railroad Co. v. Eagan.

single than if married and the father of a child or children.   The recovery is for his benefit solely.''

The court thereupon cited a large number of similar decisions in support of its ruling.   Besides those referred to by it, the following may be mentioned as directly in point :  *Mahoney v. The St. Louis & H. Ry. Co.*, 108 Mo. 191, 18 S. W. 895 ;  *Hollenbeck v. Mo. Pac. Ry. Co.*, 141 id. 97, 38 S. W. 723, 41 S. W. 887 ;  *Louisville & Nashville Railroad Company v. Gower*, 85 Tenn. 465, 3 S. W. 824.   The question is not a new one in this state.   It has been already decided.   In *Kansas Pacific Ry. Co. v. Pointer*, 9 Kan. 620, a case of a similar kind, it was held that

''It was not competent, in such a case, for the purpose of showing the injuries or their character or extent, or for the purpose of enhancing the damages which the plaintiff expected to recover, for the plaintiff to prove his pecuniary or social condition—whether he was rich or poor, married or single, or whether he had a family or not.''

Some other claims of error are made.   They do not impress us as substantial, but inasmuch as it is not necessary to reach a conclusion as to their validity we have not given them close examination.   For the two errors hereinbefore pointed out, the judgment of the court below is reversed and a new trial ordered.

SMITH, POLLOCK, JJ., concurring.