## THOMPSON v. FERGUSON & TURNLEY.
### (No. 2102.)

(Court of Civil Appeals of Texas. Amarillo.
March 21, 1923. Rehearing Denied
April 4, 1923.)

1. **Brokers** ⌾88(5) — **Statements of broker to purchaser that he might be able to procure principal to reduce price not breach of faith as a matter of law.**

In an action by brokers for commission earned in the sale of real estate, evidence *held* not to require a holding as a matter of law that a statement by one of the brokers to the prospective purchaser that he might be able to get his principal to pull the price down was a breach of faith defeating broker's right of commission, where the price at which the broker was authorized to sell had not been fixed and was not to be fixed until the principal ascertained the cost of improvements.

2. **Brokers** ⌾65(1)—**Efforts of broker to sell own property no reason for forfeiting commission.**

That the brokers urged the sale of property owned by them during the time he was trying to sell defendant's property is no reason for depriving them of their commission, in view of the fact that they had not contracted to sell defendant's property exclusively, but were operating under an agreement that defendant was to pay a commission in the event that plaintiffs found a purchaser.

3. **Brokers** ⌾86(4)—**Evidence sufficient that brokers were procuring cause of sale.**

In an action by brokers to recover commission, evidence *held* to sustain a finding that brokers were the procuring cause of the sale, notwithstanding that the owner advertised the property himself and had several private interviews with the purchaser and closed the deal in person.

4. **Fraud** ⌾35 — **Owner selling with knowledge that brokers claimed commission from him cannot claim that purchaser should pay commission, on the ground that latter falsely represented brokers had not shown property.**

In an action by brokers for commission, recovery by the owner against the purchaser in a cross-action for such amount as he might be required to pay brokers on the ground that the purchaser falsely represented that the brokers had not shown the property to him and that, in absence of such representations, a purchase price covering the commission would have been exacted, was properly denied, where the evidence showed that before the transaction was closed the brokers told the defendant in presence of the purchaser that they claimed a commission, and the purchaser then offered to call the deal off and forfeit his deposit on the purchase price, which offer the defendant refused, insisting on consummating the sale; such conduct amounting to a waiver of any fraud.

### On Motion for Rehearing.

5. **Brokers** ⌾82(4)—**Broker's fraud or breach of faith must be specifically pleaded, and cannot be proved under general denial.**

In an action by brokers for commission earned, the defense of fraud or bad faith cannot be proved under a general denial, but must be specifically pleaded.

Appeal from Potter County Court; Ray C. Johnson, Judge.

Action by Ferguson & Turnley against J. H. Thompson. Judgment for plaintiffs, and defendant appeals. Affirmed.

Stone & Guleke, of Amarillo, for appellant. S. E. Fish, of Amarillo, for appellees.

KLETT, J. The pleadings and evidence show that the appellant, J. H. Thompson, owned a lot in Amarillo, Tex., and was building a house on the property, which he listed for sale with plaintiffs, N. C. Ferguson and G. H. Turnley, real estate brokers, at $6,-250, stating that, in the event he got as much as $1,000 cash, he might sell for $6,000, and that upon completion of the house he would look over his bills to see if he could take $6,-000. Thereupon plaintiffs undertook to find a purchaser and succeeded in procuring one H. C. Egbert, to whom the defendant conveyed the property for the sum of $6,000. Plaintiff sought and secured judgment against appellant for 5 per cent. commission.

[1] During the negotiations with the purchaser one of the plaintiffs stated that "he might be able to pull Thompson down to $6,-000." There is no evidence that such effort was made by the agent. Appellant charges that this declaration on the part of the agent was a violation of the rule of uberrima fides, and defeats the right of the agent to claim a commission. The appellant did not plead this defense on the trial. Without deciding whether the question should have been raised by the pleadings, we are of the opinion the issue of good faith, as here presented, was one of fact, which we regard as resolved against the appellant by virtue of the judgment rendered. The statement complained of was not necessarily an act of duplicity or disobedience. The selling price was not fixed. Manifestly the principal was interested in reducing the price if the cost bill would permit, because the commodity offered would sell more quickly on the market. Presumably the principal engaged the services of the plaintiffs as salesmen because of their skill and ability. If good salesmanship required the agent to make the statement in order to effect the sale in good faith, then allegiance to the principal, as well as fairness to the purchaser, made it the duty of the agent to advise the purchaser of the possibility of the change in price. And, if an agent must be honest as well as loyal, we see nothing in the evidence requiring us to hold, as a matter of law, that the utterance was violative of instructions given or information received.

[2] The appellant also asserts that the agent forfeited his right to compensation in that he urged the sale of his own property

---

during the time he was trying to sell the defendant's property. We are unable to assent to this proposition in view of the fact that the plaintiffs were not under contract to sell the defendant's property exclusively, but were only operating under an offer made by the defendant to pay a commission in the event the plaintiffs found a purchaser.

[3] The next proposition presented is that the evidence does not support the finding that plaintiffs were the procuring cause of of the sale. We have carefully reviewed the evidence and reached the conclusion that this contention must be overruled. It is true that the defendant testified that he had a sign posted on the lot advertising the property for sale; that he had several private interviews with Egbert about the property; that he did not know plaintiffs were negotiating with Egbert, and that he subsequently secured Egbert's signature to the contract. But there is also evidence in behalf of plaintiffs showing that as soon as the property was listed with them they went to work with Egbert, showed him the property, gave him the price, and induced him to buy. A dispute arose before the written contract was entered into as to whether or not the plaintiffs were entitled to the commission and ended in defendant telling one of the plaintiffs to go ahead with the deal. There is also evidence that Egbert would not have bought unless the property had been shown by plaintiffs, and that during the negotiations defendant induced Egbert to buy direct from him upon the promise that he would save money. Although there are irreconcilable differences in the testimony, there is ample evidence to sustain the judgment of the trial court.

[4] The defendant filed a cross-action against Egbert, asking for judgment for such amount as may be recovered in the plaintiff's suit, the defendant alleging in his cross-action that Egbert falsely represented to defendant that no agent had shown the property to Egbert, and that upon such representation he sold the property to Egbert for $6,000, when in fact, if he had known the truth, he would have priced said property to Egbert for enough to take care of the commission, in addition to the $6,000. The defendant complains of the action of the trial court in refusing him judgment against Egbert on the cross-action. We cannot disturb this judgment because we find in the record that before the written contract was signed the plaintiffs told the defendant, in the presence of Egbert, that they claimed the commission, and Egbert also informed the defendant in the same conversation that plaintiffs were the first to show him the property, and that he guessed he would not have looked at it had it not been for them. Egbert also offered to rescind the deal and lose the $100 forfeit money advanced on the deal in order to avoid trouble, but defendant refused. In such event we think the defendant cannot complain when he did not enter into the contract in ignorance of the plaintiff's claim for commission.

The judgment is therefore affirmed.

### On Motion for Rehearing.

[5] The appellant maintains that the defense of bad faith was available under a general denial and submits a number of authorities. In our opinion they are not in point. So far as we have been able to ascertain, the rule of pleading in such case is correctly stated in Corpus Juris, in the title on Brokers, as follows:

"Thus the defense that plaintiff acted also for the other party, without defendant's knowledge, cannot be proved under a general denial, but must also be specifically pleaded; and this rule also generally applies to the defense of bad faith or fraud." 9 C. J. 643, § 115.

The appellant also insists that the issue of the broker's good faith was not one of fact for the trial court. When the broker told the customer that he might get the owner to take less than $6,250, he also stated that the owner "said he wanted to check over the bills when he might be able to take less." The case here is unlike the case of Harvey v. Lindsay, 117 Mich. 267, 75 N. W. 627, where the owner had an "asking price," and the court submitted to the jury whether or not the broker disclosed this information or caused a customer to believe that the owner would not insist upon the "price asked," and that he could press the owner into accepting a substantially less price. In such an instance the broker would assume the dual relation of undertaking to serve the adverse interests of the purchaser. Sears Land Co. v. Barton (Tex. Civ. App.) 227 S. W. 237. But in the case before us the list price depended on the cost price, which could not be furnished by the broker until the cost bills had been figured up by the owner, and, if the statement made by the broker to the customer was intended as a bona fide explanation that the price was not fixed because of lack of data on the cost of the house, we think we would not be justified in holding as a matter of law that such evidence conclusively showed bad faith. Sheurer v. Eichelberger, 206 Mo. App. 635, 227 S. W. 622; Grollman v. Alexander (Tex. Civ. App.) 237 S. W. 592; Levy v. Jarrett (Tex. Civ. App.) 198 S. W. 333.

Our refusal to reverse the judgment rendered against the appellant on his cross-action is also attacked. It is claimed by appellant that his refusal to rescind the proposed sale, after he learned of the customer's fraud, would not have relieved him of liability for commission, and that our holding that it would have saved him from such liability conflicts with our holding that the owner is liable for the commission where the broker

procures a purchaser, ready, able, and willing to buy, whether the deal is closed or not. We still think we were correct in the ruling. If the principal rejects a customer procured by the broker and refuses to enter into a contract of sale because of the discovery of fraudulent representations made by the customer concerning the consideration, we think the broker cannot say that he has produced a purchaser, ready, able, and willing to buy on the principal's terms. If the fraud has kept the minds of the parties from meeting, there is no sale unless the fraud be waived. Webb v. Durrett (Tex. Civ. App.) 136 S. W. 1189. And if, for that reason, all negotiations are abandoned, the broker has earned no commission. McCarty v. Bristow (Tex. Civ. App.) 145 S. W. 1029. But in the case before us the principal waived the fraud, as already held.

The motion for rehearing is overruled.